UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                    Case Number 19-20718

v.                                   Honorable David M. Lawson

ERIC DARNELL JOYE,

               Defendant.

_____/

## OPINION AND ORDER DENYING MOTION FOR A *FRANKS* HEARING AND MOTION TO SUPPRESS EVIDENCE

Defendant Eric Joye was indicted for possessing a firearm as a convicted felon.  This matter is before the Court on his motion to suppress the gun recovered from his jacket pocket during a search of a residence where he was found, and his motion for a *Franks* hearing.  He argues that the statements in a search warrant affidavit do not establish probable cause to search a house where the police suspected the defendant of selling drugs and guns.  And even if the affidavit is sufficient on its face, Joye says he is entitled to an evidentiary hearing under *Franks v. Delaware* because the affiant made misleading statements by omitting exculpatory information that would have changed the inferences that the magistrate could have drawn.

During oral argument, the defendant's position evolved.  He attacked certain statements in the affidavit, which characterized the depictions from a pole camera set up to surveil the house, as false.  The Court ordered the parties to submit video surveillance excerpts along with supplemental briefs.  Joye has offered innocent explanations for the encounters depicted in the surveillance video, but he has not made a convincing argument that the affidavit mischaracterizes what is there to be seen.  The defendant is not entitled to a *Franks* hearing.  The statements in the search warrant

affidavit establish probable cause to search the house. The motion to suppress evidence will be denied.

I.

The following background facts are stated as they were recited in the affidavit in support of a search warrant that was issued on October 1, 2019. The warrant authorized the search of the home on Washburn Street in Detroit, as well as the person of Eric Joye, who police believed was living in and selling drugs from the home.

Detroit Police Officer Troy Williams, a three-year investigator with the Detroit Police Department (DPD) Firearms Investigation Team, signed the search warrant affidavit. In August 2019, Williams began investigating a tip from a confidential informant who had told a fellow investigator, Special Agent Klupacs of the Bureau of Alcohol, Tobacco, and Firearms (ATF), that Eric Joye was selling drugs and guns from a home where Joye was living in Detroit.

Williams learned from a law enforcement database query that in January 2018, Joye was arrested at the Washburn address on assault and weapon charges. Williams also discovered that Joye had five prior felony convictions, and in August 2019 he was under sentences of probation from the states of Michigan and Tennessee. However, the Washburn address was not the address that Joye had reported to probation authorities as his residence.

During the third week of August, Klupacs and other ATF and DPD officers surveilled the Washburn Street location and saw Eric Joye at the home and entering and leaving through the front door. Between September 18 and 30, 2019, agents of the ATF and DPD also conducted "fixed surveillance" of the premises using a pole camera, which recorded various persons and vehicles coming and going.

On September 18, 2019, during their fixed surveillance, police observed Eric Joye mowing the grass in the front yard of the residence.  The affidavit then documents a series of pole-camera observations — 16 in all — which Williams characterized as "suspected narcotics transactions." The first one, occurring at 6:30 p.m. that same day, involved an unknown man who walked to the front porch of the house, stayed for about one minute, and left on foot with an object in his hand. Williams characterized that as a "short stay."  Williams described 15 other short stay transactions that varied in detail, some with individuals arriving by car, some on bicycles, all staying for a few minutes.  He described five on September 20, three on September 21, two on September 25, three on September 26, and two on September 30.  Joye was seen at the home on September 18, 25, 26, and 30.

In one of the excerpts from September 25, 2019, police observed Eric Joye at the home, this time receiving a package at the front door.  On September 26, 2019, Joye was seen meeting a vehicle that had parked in front of the home, reaching into the driver side window to retrieve a black duffel bag, taking the bag into the home, and then returning to the car without the bag, and reaching into the driver side window of the vehicle again.  On September 30, 2019, during another surveillance, Joye was seen at the residence and was observed getting into a car that was parked near the home and driving away.

Williams characterized some of the encounters as apparent hand-to-hand transactions outside the home where a vehicle would arrive, a person would exit the home and make a hand-to-hand exchange with an occupant, and then the vehicle would leave.  Similar short stays and hand-to-hand transactions were noted on other days when Joye was not confirmed to be present. One short stay was recorded on September 18, 2019.  On September 20, 2019, three short stay visits were noted, and two hand-to-hand transactions with occupants of vehicles that were parked

outside the home.  Two short stays and one hand-to-hand transaction were recorded on September 21, 2019.  Two hand-to-hand transactions were observed on September 25, 2019.  Two short stays were observed on September 26, 2019.  Finally, on September 30, 2019, two more hand-to-hand transactions were observed with the occupants of vehicles that parked briefly outside the residence.

The search warrant was signed on October 1, 2019 by a state magistrate and executed the next day.  Officers found Joye inside the home with his girlfriend and Joye's adult son.  Joye's jacket was found on a railing in the living room of the house, and inside the jacket pocket was a loaded Ruger 9mm handgun, along with a copy of Joye's birth certificate.  The police also seized 213 grams of marijuana in a vacuum sealed bag, along with a scale and small baggies stored in a box on the kitchen table.  Joye's son also was found to have five grams of marijuana and 1 gram of heroin on his person.

On October 24, 2019, the defendant was charged in a single count indictment with possessing a firearm after having been convicted of a felony, contrary to 18 U.S.C. § 922(g)(1).  The jury trial was set to begin on January 28, 2020, but it was adjourned after the defendant filed his motion to suppress.  He subsequently also filed a motion for a *Franks* hearing.

II.

In his motion brief, Joye accused the police of making false statements in the search warrant affidavit because he believes that they uncovered information that undercut the inference that some of the encounters actually involved drug exchanges.  But during oral argument, he added a new theory: Williams mischaracterized the video footage that he described in the affidavit.  Joye believes that characterizing these incidents as "suspected narcotics transactions" is misleading and was done intentionally to persuade the magistrate to issue the warrant.  He has asked for an evidentiary hearing to explore these claims.

To accept the defendant's argument, the Court must have a reason to look beyond the four corners of the affidavit, which requires consideration of the jurisprudence spawned by *Franks v. Delaware*, 438 U.S. 154 (1978).  Under *Franks,* if the defendant shows by a preponderance of evidence that a search warrant affiant committed perjury or made a statement in reckless disregard for the truth, the offending statements must be excised from the affidavit and probable cause reassessed.  *Franks,* 438 U.S. at 155-56.  However, incorrect statements due to mere negligence or innocent mistake are insufficient to void a warrant.  *Id.* at 171; *see also United States v. Ayen,* 997 F.2d 1150, 1152 (6th Cir. 1993); *United States v. Rodriguez-Suazo,* 346 F.3d 637, 648 (6th Cir. 2003).  Such information need not be removed from the affidavit.

"*Franks* also extends to circumstances in which an officer omits evidence in a search-warrant affidavit that is critical to determining the existence of probable cause." *United States v. Duval*, 742 F.3d 246, 251 (6th Cir. 2014) (citation omitted); *see also United States v. Carpenter,* 360 F.3d 591, 596 (6th Cir. 2004) (en banc) ("[T]his court has recognized that material omissions [from an affidavit] are not immune from inquiry under *Franks.*") (second alteration in original and internal quotation marks omitted).  "[T]o be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause." *Carpenter,* 360 F.3d at 596–97.

To be entitled to a *Franks* hearing, Joye must "1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017)).  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere

desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.  The Sixth Circuit has characterized this as "a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

Joye first points to three incidents that were omitted from the warrant affidavit, which, he says, suggest that activity observed at the home was less nefarious than the affidavit implied.  First, on September 20, 2019, Thrillden Holmes, who is a family friend of the defendant, was pulled over by police after visiting the home, but when police searched his vehicle no drugs were recovered.  Second, on September 25, 2020, Patricia Gaston, who is the mother of one of the defendant's children, also was stopped by police after leaving the home.  She provided her license, registration, and insurance to the police.  Nothing further was done and no evidence of criminal activity was uncovered.  Finally, on another (unspecified) occasion, a person who departed the home after a supposed drug transaction later returned to the home (according to defendant, after having run an errand).

None of this information casts the statements in the affidavit in a different light.  First, as the government asserts, and the defendant does not dispute, two of the three encounters with police were with visitors to the home who were not among the various suspected drug customers.  Their innocent visits suggest, at most, that not all of the persons who went to the home did so to buy drugs.  Second, the government points out that Ms. Gaston's car was not searched, so there is no evidence about what, if anything, was in the vehicle.  Third, the fact that no drugs were recovered in the one vehicle that was searched does not rule out the reasonable supposition that the person visited the home to deliver drugs, not to procure them.  And fourth, the return of a third person

after a suspected drug transaction is, as the government suggests, reasonably consistent with a customer returning for a repeat purchase.

None of the so-called "omitted evidence" would have "*undermined* the showing of probable cause." *Carpenter,* 360 F.3d at 596–97. Joye, though, says that the characterizations in the affidavit of the short-stay encounters were affirmatively false. A view of all but two of the "transactions" (transactions 1 and 7 could not be viewed on the medium the defendant submitted) provides no support for the defendant's argument.

The incidents — numbered 1 through 16 — are characterized in the affidavit as "suspected narcotics transactions". In a significant number of the incidents, the defendant and the government have disagreements about whether the video shows any exchange of anything, or whether the persons seen visiting the home arrived or left with any objects visible in their hands. That argument is irrelevant, though, to whether the statements in the affidavit are false. The real question is whether Officer Williams accurately described in the affidavit what the video depicted. If he did, then even with his characterizations, the magistrate was free to draw his own conclusions.

Take transaction 5. The defendant asserts that an occupant of the home "greets" a person in a vehicle, but nothing is seen in his hands when he leaves or enters the home. The affidavit states that a vehicle pulled in front of the Washburn Street house, a person came from the front porch and approached the passenger side of the vehicle, and he "conducted a hand to hand transaction with the unknown occupant through the passenger window." The video excerpt depicts the resident reaching in through the passenger side window with a closed left fist. That footage is consistent with a suspected hand-to-hand exchange of contraband; it does not mischaracterize what is there to be seen.

Also look at transaction 2. The defendant asserts that no transaction is seen at all; the video only shows a person standing on the porch and waving at someone, while the occupant of a vehicle ("a teenager") retrieves items from the back of a car. But the affidavit says nothing more. It recites that a red Ford Explorer parked in front of the Washburn house, a person exited from the passenger side, and "[t]he unknown male walked up to the front door area of the residence. After approximately 5 minutes, the man returned to the vehicle, and the Ford Explorer left the area." There is no inaccuracy here.

The defendant's criticism of the other recitations is similar. For transactions 6, 8, 13 and 16, the defendant contends that the entire record of the video surveillance shows the same person visiting the home multiple times. In transaction 6, the defendant asserts that the person is the father of defendant's nephew and "appears in the pole cam video surveillance on multiple occasions." For transaction 8, the defendant asserts that the person is the defendant's brother-in-law who, in an earlier video excerpt, is seen receiving money from the defendant and then leaving, but the affidavit omitted the context that the same person later is seen returning to the home, assertedly with items purchased at a nearby store. In transactions 13 and 16, the defendant asserts that the same woman is seen twice visiting the home, assertedly to receive payment for a legitimate sale of clothing to the defendant.

None of this shows that Officer Williams knowingly and intentionally or recklessly included a false statement in the affidavit. *First*, citing the "suspected narcotics transactions" numbered 1, 2, 3, 6, 7, 9, 11, 12, and 14, the defendant repeatedly asserts that the video "fails to show any exchange of money or narcotics whatsoever" during the recorded visits to the home. This criticism is irrelevant and does not support the defendant's claims of either material omission or misrepresentation, because the warrant affidavit did not represent that any of the recorded

incidents involved any observed exchange of narcotics.  Instead, the affidavit described the incidents as "suspected" based on the brief length of time that the visitors remained at or outside the residence, and such "short stays" have been found to support a reasonable conclusion that the visitors were involved in dealing contraband.  *See United States v. Bush*, 727 F.3d 1308, 1314 (11th Cir. 2013) ("Scott observed cars and individuals appearing at 2904 Cocoa Court, staying for short periods of time, and then leaving.  This activity, he testified, was consistent with narcotics-related sales.  A short stay meant a visit of 10 to 15 minutes.").

*Second*, the defendant contends that the descriptions of several incidents omit "important context" which establishes that the visits to the premises were for innocent purposes.  The defendant does not identify the source of this "background" information, but presumably it was obtained by his attorney or investigator through witness interviews with persons depicted in the video record.  For example, the defendant asserts that the person depicted in suspected transaction 4 "left a cell phone at the home" when he visited earlier in the day, and that the defendant is seen "returning" the phone to the visitor.  In transaction 6, the defendant asserts that the male visitor to the home is the father of the defendant's nephew, who lives across the street, and that the man often visits the home.  In transaction 8, the defendant asserts that the visitor is the defendant's brother in-law, who also lives across the street, and that "investigation revealed" that the visitor retrieved money from the defendant so that he could go to a nearby store, and he is shown both receiving money and later returning to the residence "with the purchased items."  The defendant proffers similar independently derived "context" for transactions 9 through 13 and 16, asserting that all of those visitors went to the home and interacted with or exchanged items with the defendant for entirely innocent reasons.

None of the "background" information revealed by the defendant's subsequent investigation is relevant to the probable cause determination or the request for a *Franks* hearing, because the defendant does not contend either (1) that any of the "context" supplying innocent explanations for the visits was facially evident from the video recordings, but deliberately omitted by the affiant in describing the incidents, or (2) that the investigating officers knew, and deliberately failed to disclose to the magistrate, any of the supposedly explanatory circumstances of the visits when they sought the warrant.  It is well settled that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).  Moreover, it is equally well established that "a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause." *Dodd v. Simmons*, No. 15-6145, 2016 WL 3613389, at *4 (6th Cir. July 6, 2016); *accord Nerswick v. CSX Transportation, Inc.*, 441 F. App'x 320, 323 (6th Cir. 2011) ("Once an officer obtains probable cause, . . . he has no further obligation to continue the investigation and may instead pursue arrest of the suspect.").

Joye has not shown that any of the information in the search warrant affidavit was false or made with reckless disregard for the truth.  None of the paragraphs need be ignored in the probable cause post-mortem, and Joye is not entitled to a hearing under *Franks v. Delaware*.

### III.

Joye contends that even with the affidavit intact, it falls short of establishing probable cause to search the house.  He argues that evidence of "short stays," absent any other information suggesting that any exchanges involved contraband drugs, was not adequate corroboration of an unnamed informant's tip about drug dealing at the premises, and the informant's reliability was not independently verified by anything in the affidavit.  The government responds, predictably,

that the facts recited in the warrant affidavit adequately establish a grounded suspicion that drug trafficking was taking place at the subject premises, and even if the recitation fell short of establishing probable cause, it is at least sufficient to show a minimal nexus with suspected illegal activity so that the good faith exception to the warrant requirement should be applied.

The parties agree on the basic legal principles. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," and "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 585-86 (1980) (quotations omitted). Thus, "[a] search is generally unreasonable if it is not conducted pursuant to a warrant issued upon probable cause." *Liberty Coins*, 880 F.3d at 280 (citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)).

"Probable cause exists if 'the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.'" *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). "The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only probable cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Ibid.* (quotations omitted).

The warrant affidavit here set forth sufficient information from which a reasonably prudent person could conclude that evidence of the defendant's drug dealing activities would be found in

the premises that was searched.  "When [the Court] review[s] a warrant application for indicia of probable cause, [it must] read the affidavit reasonably holistically, examining the totality of the circumstances and employing a healthy dose of common sense," and "consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quotations omitted).  The defendant mounts no wholesale assault on the totality of the narrative presented in Officer Williams's affidavit, but instead merely criticizes some of the circumstances described as not pointing conclusively to an inference that drug dealing was happening at the home.  However, the facts described, considered as a whole, support a finding of probable cause to search the house.

To start, there was information from a confidential informant who told police that Joye was selling guns and drugs out of the home.  Although the informant was not identified by name, the information supplied adequately was corroborated by police when they surveilled the home.  "Where . . . information in the affidavit comes from a confidential source, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (*United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)).  "'While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Ibid.* (quoting *Frazier*, 423 F.3d at 532.).  "'As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.'" (quoting *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)).  In this case, there was no information offered in the affidavit to support an inference that the informant had been reliable in other instances.  But

police were able to make sufficient independent observations to corroborate the tip that Joye was living at the home, and to suspect that he was selling contraband from there.

First, officers surveilling the home saw Joye at the premises, watched him come and go through the front door, observed him maintaining the curtilage, and saw him bring items into the home and receive deliveries there.  Those circumstances corroborated the informant's tip that Joye was living at the home, despite the fact that he had reported a different place of residence to probation authorities.  The fact that the defendant took steps to conceal his residence at the home from probation authorities certainly suggests a reasonable inference that he was carrying on business there that he would rather not have exposed to supervisory scrutiny.

Next, there was information in the warrant that by reasonable inference corroborated the informant's assertion that the covert business in which the defendant was engaged was the sale of contraband drugs and weapons.  The police recorded via video surveillance fourteen "short stay" visits or suspected hand-to-hand transactions on the premises within a 12-day period.  Most of those occurred on days when the defendant also was present.  The defendant also was seen receiving a delivery in a black duffel bag and receiving a different delivery to the front door of the home.  Those activities could suggest to a reasonable observer that the defendant was dealing in contraband, and observations of such behaviors have been found by federal courts to support an inference of probable cause to believe that a subject is involved in drug trafficking.  *Bush*, 727 F.3d at 1314.

The defendant principally cites *United States v. Ronnie Buffer*, 529 F. App'x 482 (6th Cir. 2013), in which the Sixth Circuit held that "observation of as few as three visits, lasting as little as one minute each, over a possible twenty-four-hour span, simply does not support a conclusion that there was a fair probability that evidence of drug trafficking would be found" in a defendant's

residence. *Id.* at 485. However, the observations of numerous short stay visits and hand-to-hand transactions in this case is both more comprehensive and more replete in incriminating details than the vague minimalist slate of encounters held to be insufficient in *Buffer*.

Finally, the circumstances recited in the warrant certainly supply adequate evidence to justify a reasonable officer's good-faith reliance on the magistrate's probable cause determination. *See United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) ("In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule for evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'") (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). Even if in some respect the warrant application was lacking, it was not so devoid of substance that no reasonable officer could have thought that probable cause was established for the search of the subject premises. *United States v. Myers*, 354 F. Supp. 3d 785, 795 (E.D. Mich. 2019) ("The focus in [*United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018),] was on the proposition that drugs might be found in the home of a known drug dealer, which by itself would not establish probable cause. But that may be sufficient to support an officer's good faith reliance on a search warrant. The 'link' that supported the good faith exception in *McCoy* was the defendant's 'continual-and-ongoing-operations' of a drug distribution business. Those facts, the court held, 'are enough to satisfy the "less demanding" good-faith standard.'" (quoting *McCoy*, 905 F.3d at 417 ("[A] link between the drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the warrant."))).

The defendant points to circumstances (discussed above) that, he contends, were omitted from the warrant that casts his activity in a less sinister light. But it is well settled that "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic

might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Moreover, particularly when evaluating the good faith exception, the Court must resist invitations to piecemeal the affidavit line-by-line, rather than considering a natural and holistic reading of the information presented. *White*, 874 F.3d at 502 ("The dissent makes every effort to resist the natural reading of the affidavit, parsing it line-by-line in a way that a reasonable officer wouldn't. It reads the affidavit as a critic would, focusing on what is missing as opposed to asking whether what is there is enough to supply some minimal connection between the illegal activity and the place to be searched.").

The warrant affidavit was sufficient in substance to support a finding of probable cause, and, even if it was not, reliance on it should be excused by the good faith exception.

IV.

The defendant has not made the showing required for a hearing under *Franks v. Delaware*, and the magistrate properly issued the search warrant, reasonably determining from the search warrant affidavit that probable cause existed.

Accordingly, it is **ORDERED** that the motion for a *Franks* hearing (ECF No. 34) is **DENIED**.

It is further **ORDERED** that the motion to suppress evidence (ECF No. 29) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 15, 2020